# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| ALEXANDER HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:17CV00147 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| MARCUS ELAM, ET AL., | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |
| | ) | |

*Alexander Harris, Pro Se Plaintiff; Margaret H. O'Shea, Office of the Attorney General, Richmond, Virginia, for Defendants.*

The plaintiff, Alexander Harris, a Virginia prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Harris claims that when prison officials used excessive force against him and after he filed a grievance about the incident, they retaliated by convicting him of a disciplinary infraction, in violation of his constitutional rights. The defendants have filed a Partial Motion to Dismiss.[1] Harris has responded and has also filed a Motion for Leave to Amend, along with a proposed amendment, which I have treated as a supplement to the initial Complaint. After review of the record, I will allow the amendment, but I conclude

---

[1] The defendants concede that Harris' claims against Jackson, Lowe, Morgan, Meadows, and Williams related to his allegations of excessive force survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

that the defendants' motion must be granted as to portions of the Complaint as amended.

I.

Harris' claims arise from events during his incarceration at River North Correctional Center ("River North").[2] In the chow hall on June 5, 2016, Correctional Officer S. Williams told Harris "she heard someone say that he would kill or hurt one of [River North's] K-9's if it ever bit him." Compl. 5, ECF No. 1. Harris denied making any such threat. After the meal, Harris was returning to his assigned building when Sergeant Jackson, with Correctional Officers Meadows, Lowe, and Williams, and K-9 Officer Morgan,[3] approached and ordered him to put his hands on the fence. Harris complied. When he "turned his head to ask what did he do," Lowe "suddenly grabbed Harris by the neck and threw him to the ground." *Id.* at 6. Jackson ordered Morgan "to deploy his dog on Harris and while the K-9 attacked [and bit] Harris as he was on the ground, Sgt. Jackson began kicking Harris in his face and head." *Id.* Harris states, generally, that he was "threaten[ed] for a hear say allegation and [he] was beaten and assaulted by both the staff and K-9 for no reason." Compl. Harris Aff. 1, ECF No. 1-1. He "did not

---

[2] This summary of facts is taken from Harris' Complaint, his later amendment, and exhibits he has submitted with his pleadings. For the sake of clarity, page numbers in citations to the record refer to page numbers in the court's electronic docket.

[3] Harris referred to this defendant as John Doe in the facts section of the Complaint, but elsewhere identified him as K-9 Officer Morgan.

do anything to provoke . . . being assaulted and beaten by the named Defendants." *Id.*

The officers then placed Harris in handcuffs and shackles, "dragged" him to a segregation area and threw him into a "shower holding cell[ ]." Compl. 6, ECF No. 1. They ordered him to kneel for removal of the restraints, but his injuries prevented him from quickly complying. Jackson and Meadows "grabbed" Harris, threw him on the ground, and "punched and kicked [him]." *Id.*

Citing this incident, Jackson charged Harris with a "105(a) Aggravated assault upon a non-offender" under Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 861.1 governing offender disciplinary actions. *Id.* The hearing officer "refused all of [Harris'] requests for witnesses and camera footage review," *id.*, found him guilty of the offense, and penalized him with thirty days of disciplinary segregation, loss of 180 days of "Good Conduct Allowance or Equivalent Earned Sentence Credit," and restitution of $2009.95. Mot. Default J. Ex. 2, at 5, ECF No. 24-1. Shortly thereafter, Harris also learned that he would be transferred to a higher security prison.

Harris filed numerous Informal Complaint forms about the officers who had assaulted him, "all of which went unanswered." Compl. 7, ECF No. 1. On July 4, 2016, he filed a Regular Grievance, stating his intention to file "excessive force charges on Sgt. Jackson and C/O Lowe" for the assault on June 5. V.S. Attach., at

6, ECF No. 5. In it, Harris also stated, "'I have to let you know' that I will name you in my § 1983. and for what reason if you don't file my grievance. <u>so</u> don[']t claim this is more than one issue.'. . . This Grievance is dealing with the issue of Sgt. Jackson and c/o Lowe using excessive force on me." *Id.*

On July 12, 2016, Harris was served with another disciplinary charge, a 112 offense, which is "demanding or receiving anything of value under threat of any kind, including by extortion or blackmail." Am. Compl. Attach. Am. Particularized Statement of Facts and Claims, at 2, ECF No. 23-1. This charge was based on a report from K. Sheets, Office Service Assistant, who received Harris' Regular Grievance threatening that if she failed to accept it, Harris would name her in a § 1983 lawsuit. Lieutenant Blevins investigated the charge and placed Harris in pre-hearing detention, after deciding that Harris' statement in his grievance "constituted a valid threat to Sheets' life and safety," and "to persons, property, and [River North] institutional security." *Id.*

Blevins proposed a penalty offer of twenty-five days in disciplinary segregation, but Harris declined. At the hearing before Institutional Hearing Officer MacVean, Harris argued that by making the statement in the Regular Grievance, he was exercising his constitutional rights to free speech and access to courts, for which prison officials could not lawfully retaliate against him. MacVean did not consider this argument to be a sufficient defense, found Harris

guilty of the offense, and penalized him with fifteen days of "Disciplinary Segregation" and "Loss of ALL SGT." Am. Compl. Attach., at 2, ECF No. 23-2. During the disciplinary review process, Unit Manager Dowell, Warden J. F. Walrath, and Regional Administrator Marcus Elam upheld MacVean's decisions.

In 2017, Harris was transferred to Sussex I State Prison. In October 2017, Elam overturned Harris' 105 disciplinary conviction for assaulting a nonoffender.

Liberally construed, Harris' Complaint as amended alleges the following claims: (1) on June 5, 2016, Jackson, Meadows, Lowe, Williams, and Morgan used excessive force against Harris; (2) Sheets filed the disciplinary charge against Harris in retaliation for his exercise of his constitutional rights to free speech and access to courts, and Blevins, MacVean, Dowell, Walrath, and Elam participated in or failed to prevent or overturn the unlawful retaliatory disciplinary conviction. As relief, Harris seeks compensatory and punitive damages and costs. As additional relief on Claim 2, he seeks "declaratory injunctive relief" whereby the defendants are "enjoined from any and all further punishment against Harris in regards to him exercising his 1st Amendment Rights on July 12, 2016." Am. Compl. Attach. Am. Particularized Statement of Facts and Claims, at 6, ECF No. 23-1.

II.

A. Standard of Review.

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of a complaint" to determine whether the plaintiff has properly stated a claim for relief. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[4] A motion to dismiss under Rule 12(b)(6) must be granted when the complaint "does not allege enough facts to state a claim to relief that is plausible on its face." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

B. Initial Matters.

In response to the defendants' motion, Harris consents to dismissal of his claims against defendants Regional Director Ponton (listed as "Pon" in the Complaint) and Assistant Warden Barry L. Kanode. Accordingly, I will grant the motion as to these defendants.

---

[4] I have omitted internal quotation marks, alterations, or citations here and throughout this opinion, unless otherwise noted.

For a similar reason, I will grant the motion as to defendant McBride. Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated "a right arising under the Constitution or laws of the United States." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Neither the Complaint nor the supplement describes any action taken by McBride in violation of Harris' constitutional rights.[5]

I must also grant the defendants' motion as to Harris' claims for monetary damages against them in their official capacities. "[N]either a State nor its officials acting in their official capacities are persons under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, in their official capacities, the defendants enjoy the same immunity against lawsuits for monetary relief that the state enjoys. *Id.* at 70.

---

[5] One exhibit to the Complaint includes McBride's name. *See* V.S.Attach., at 7, ECF No. 5. After classification review proceedings, McBride recommended on July 6, 2016, that Harris be transferred to a "Level 5" (higher security) prison, based on "poor institutional adjustment, negative attitude, and threatening behavior" at River North. *Id.* McBride also recommended a reduction in the rate at which Harris could earn good conduct time and his placement in administrative segregation until resolution of the transfer recommendation. Harris was later transferred to a Level 5 facility.

Even if I liberally construe the Complaint as incorporating these facts by reference, I find no basis for any constitutional claim against McBride. Harris has no constitutionally protected right to a particular classification status for security level or earning good conduct time, or to avoid transfer to a higher security prison. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 486 (1995) (restricting state-created liberty interests in due process claim to those resulting in atypical and significant departure from expected prison conditions); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no constitutionally protected right to avoid transfer to higher security prison).

Harris has filed a Motion for a Default Judgment that I must deny. Harris states that in response to his requests for production of the video footage of the June 5, 2016, incident, the defendants have indicated that they cannot locate the requested footage. Harris also alleges that in 2016, officers "had possession of the relevant security camera footage and used it as physical evidence to falsely convict [him] of assault upon an officer," as indicated on the disciplinary report. Mot. Default J. 1-2, ECF No. 24. Moreover, in response to Harris' earlier Motion for Preliminary Injunction, by order entered June 14, 2017, I directed the defendants to preserve the video footage related to the June 5, 2016, incident. Now, Harris contends that their failure to do so entitles him to a judgment invalidating the conviction on the 105 charge and precluding the defendants from mentioning these disciplinary proceedings at trial.

After filing this "Motion for Default Judgment," Harris submitted evidence that the 105 charge had been overturned. Accordingly, I will dismiss his motion as moot. If the case is scheduled for trial, if warranted, Harris may request an appropriate jury instruction as to an inference of spoliation, based on the defendants' failure to preserve the video footage as directed.

### C. The Retaliation and Due Process Claims.

The defendants directed their Motion to Dismiss to the retaliation claims as stated in the Complaint that did not clearly identify the acts or omissions Harris believed to be retaliation or denial of due process. The Amended Complaint substantially corrects this factual pleading deficiency. Harris has now clearly alleged that by filing the 112 charge against him, Sheets unlawfully punished and retaliated against him for exercising his rights to free speech and to access the courts by stating he would sue her if she did not accept his grievance. I also construe his supplement as suing Blevins, MacVean, Dowell, Walrath, and Elam for failing to recognize the retaliatory nature of the charge and prevent or correct the constitutional violation that this conviction and disciplinary sanctions worked against Harris. Finally, I liberally construe the Complaint as amended as suing MacVean, Dowell, Walrath, and Elam for convicting Harris of the 112 offense without sufficient evidence or failing to correct that problem, in violation of due process. Therefore, I must deny the defendants' motion to the extent that it relies on a contention that the factual allegations do not state plausible retaliation and due process claims.

The defendants also argue that all of Harris' claims regarding the disciplinary proceedings on the 112 charge are barred from review because the disciplinary conviction has not been invalidated through administrative or habeas

corpus actions. I must deny their motion on this ground for lack of information in the record.

"[A] state prisoner's § 1983 action is barred . . . if success in that action would necessarily demonstrate the invalidity of [that prisoner's] confinement or its duration," unless the prisoner proves that the challenged criminal or disciplinary conviction has been terminated in his favor. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (interpreting *Heck v. Humphrey*, 512 U.S. 477 (1994)); *see also Edwards v. Balisok*, 520 U.S. 641, 647-48 (1997) (applying *Heck* to § 1983 claim seeking restoration of good conduct time forfeited as penalty for prison disciplinary conviction). Thus, when an inmate's § 1983 claim about a disciplinary conviction, if successful, could shorten his term of imprisonment through the restoration of forfeited good conduct time, the claim is barred under *Heck*, unless he first proves that the conviction has been terminated in his favor, through habeas proceedings or otherwise. The favorable termination requirement in *Heck* and *Balisok* does not apply, however, to bar § 1983 claims challenging a prison disciplinary conviction that does not call into question the fact or length of the inmate's term of confinement. *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) ("*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge [to the legality

of a disciplinary proceeding] that threatens no consequence for his conviction or the duration of his sentence").

As part of the penalty for the 112 offense, Harris was to lose "ALL SGT - All." Am. Compl. Attach., at 2, ECF No. 23-2. This acronym is spelled out elsewhere in the record as "Security Good Time" or "Sentence Good Time." Am. Compl. Attach. Am. Particularized Statement of Facts and Claims, at 5, ECF No.23-1; Pl.'s Resp. Mem. Supp. Mot. Dismiss ¶ 16, ECF No. 22. Harris' Complaint as amended also appears to be seeking removal of the sanctions imposed for the 112 offense, including the lost STG.

The parties have not provided me with evidence, however, about what SGT is or how losing it or having it restored affects an inmate's term of confinement. I note that the VDOC's disciplinary procedure refers to loss of "Good Conduct Time" or "Earned Sentence Credit" as a potential disciplinary penalty, but makes no mention of SGT.[6] Thus, from the current record, I cannot say whether success in the retaliation and due process claims seeking to invalidate the disciplinary conviction and lift its sanctions would also implicate the length of Harris' confinement so as to trigger the bar under *Heck*. I must deny the Motion to Dismiss as to these claims accordingly.

---

[6] *Virginia Department of Corrections Procedures*, 861.1RH Offender Discipline, Institutions, 1 (Apr. 1, 2016), https://vadoc.virginia.gov/about/procedures/documents 800 /861-1_RH.pdf .

III.

For reasons stated, it is hereby **ORDERED** as follows:

1. The Motion to Amend and Supplemental Complaint (ECF No. 23) is GRANTED, and the Complaint is hereby supplemented by the attached amendment and exhibits;

2. The plaintiff's "Motion for Default Judgment" (ECF No. 24) is DENIED as moot;

3. The Partial Motion to Dismiss for Failure to State a Claim (ECF No. 19) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to all claims for monetary damages against the defendants in their official capacities and as to all claims against defendants Ponton, McBride, and Kanode. The clerk shall terminate defendants Ponton, McBride, and Kanode as parties to this case. The motion is DENIED as to all other claims against the remaining defendants.

4. The defendants are DIRECTED to file any motion for summary judgment within 28 days from entry of this order. If no such motion is received within that time, the case will be set for a jury trial.

ENTER: March 21, 2018

/s/ James P. Jones
United States District Judge