# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ALEXANDER HARRIS,** | ) |
| Plaintiff, | ) Case No. 7:17CV00147 |
| v. | ) **OPINION AND ORDER** |
| **MARCUS ELAM, ET AL.,** | ) By: James P. Jones |
| | ) United States District Judge |
| Defendants. | ) |

*Alexander Harris, Pro Se Plaintiff; Margaret H. O'Shea, Office of the Attorney General, Richmond, Virginia, for Defendants.*

This prisoner civil rights action under 42 U.S.C. § 1983 is now before me on the defendants' Motion for Summary Judgment and the response thereto filed by the pro se plaintiff, Alexander Harris. After review of the parties' submissions and evidence, I conclude that the defendants' motion must be granted in part and denied in part.

## I. BACKGROUND.

In my previous opinion in this case, *Harris v. Elam*, No. 7:17CV00147, 2018 WL 1410419, at *1-2 (W.D. Va. Mar. 21, 2018), I summarized Harris's allegations about the defendants' use of force in some detail and, thus, I offer only a brief overview here. Harris claims that on June 5, 2016, while he was confined at River North Correctional Center ("River North"), an officer confronted him about

having threatened to harm prison dogs if they bit him. Later, although Harris says he was posing no threat, he was thrown to the ground, a K-9 was ordered to attack and bite him, and he was kicked in the face and head. Harris claims he was then dragged to another area of the prison, thrown on the ground, and punched and kicked.

Harris also alleges that he tried to exhaust administrative remedies concerning the officers' assaults. He warned officials in his grievance documents that if the grievances were not filed, he would name grievance officials as defendants in a lawsuit. Because of this warning, Harris was found guilty of the prison offense of threatening defendant Sheets and penalized with fifteen days of disciplinary segregation and loss of all statutory good time ("SGT.") Am. Compl. Attach. 2, ECF No. 23-2. Other defendants upheld these findings during Harris' disciplinary appeals.

Harris then filed this § 1983 action. Remaining at issue are the following claims from his Amended Complaint: (1) on June 5, 2016, defendants Jackson, Meadows, Lowe, Williams, and Morgan used excessive force against Harris or failed to intervene; (2) defendant Sheets filed a disciplinary charge against Harris in retaliation for his exercise of his constitutional right to file grievances, to free speech, and to access the courts; and (3) defendants Blevins, MacVean, Dowell, Walrath, and Elam deprived Harris of due process during the disciplinary

proceedings and furthered the retaliation that Sheets instigated. As relief, Harris seeks compensatory and punitive damages. On summary judgment, the defendants contend that the excessive force claim must be dismissed because Harris failed to exhaust administrative remedies properly before filing this action. They also argue that Harris's retaliation claim fails on the merits and that his due process claim is barred because success on its merits would invalidate his term of confinement.

## II. DISCUSSION.

### A. The Summary Judgment Standard.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the proof, taken in the form admissible at trial and resolving all factual doubts in favor of the non-moving party, would lead a reasonable juror to but one conclusion. *Id.* at 247-52. I must "view the facts and draw reasonable inferences in a light most favorable" to Harris, as the nonmoving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The defendants have filed supporting affidavits and documentation. Accordingly, to survive the defendants' motion, Harris must present sufficient evidence that could carry the burden of proof of his claims at trial. *See Id.* He "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248.[1] "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

B. Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act ("PLRA") provides that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement is "mandatory," *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available

---

[1] I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The defendants bear the burden of proving the affirmative defense that Harris failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The defendants argue that Harris did not exhaust available administrative remedies regarding his excessive force claims before filing this lawsuit. In support of this contention, they present an affidavit from River North Grievance Coordinator B. Walls.

Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that Virginia Department of Corrections ("VDOC") inmates must follow to comply with § 1997e(a). Mem. Supp. Mot. Summ. J. Ex. 1, Walls Aff. ¶ 4 and Enclosure A, ECF No. 33-1. Under this procedure, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal Complaint form and submitting it to prison's Grievance Department. His form will be forwarded to the appropriate department head for investigation. The inmate should receive a written response on the bottom of the Informal Complaint form within fifteen days,

so that he can use that form necessary to initiate the formal grievance procedure by filing a Regular Grievance.

A Regular Grievance must be submitted within thirty days of the occurrence about which it complains and may address only one issue. The inmate should submit with the Regular Grievance along with the Informal Complaint and all other records necessary to address his issue. The Regular Grievance is considered to have been received on the working day when it is dated/date stamped by the Grievance Department. After investigation of the Regular Grievance, the warden or his designee will send the inmate a Level I response. If the responding official determines the grievance to be unfounded, to satisfy exhaustion under § 1997e(a), the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III. Walls Aff. ¶ 8, ECF No. 33-1.

Walls states that based on a review of prison records, Harris did not file any Informal Complaint form about the June 5, 2016 incidents. *Id.* at ¶ 10. In Harris's verified Complaint and in his affidavit in response to defendants' motion, he states that he *did* file Informal Complaint forms about the incidents on June 5, 2016, but never received any response or answer.[2] The parties agree that Harris filed at least

---

[2] Harris also states that he sent to the court copies of the Informal Complaint forms about the excessive force allegations. *See* Resp. M. Summ. J. Harris Aff. ¶ 29, ECF No. 41-1. While no such document appears in the record of this case, I have located one Informal Complaint about the June 5, 2016, incident that Harris submitted with his

three Regular Grievance forms about the June 5, 2016 incidents, all of which were rejected at intake.

The following documents are contained in the record. Harris signed and dated a Regular Grievance on June 30, 2016, stating his desire "to take charge of assault out on" Officers Jackson and Lowe for excessive force involving an "attack dog." *Id.* at ¶ 11 and Enclosure B, ECF No. 33-1. This document did not include the date of the alleged excessive force. Harris warned, "if you refuse to file my grievance I have no choice, but to file a § 1983 civil action case to the court nam[i]ng you as a defendant alone [sic] with Sgt. Jackson and C/O Lowe naming you as a defendant den[y]ing me my constitutional rights to file a grievance." *Id.* at Enclosure B. This document also stated that Harris had previously filed an Informal Complaint form and another Regular Grievance form about seeking charges against these officers. It requested a receipt showing that the June 30 Regular Grievance had been filed and asked for review of the video. The June 30 Regular Grievance was rejected at intake because it complained about more than one issue. Harris did not appeal this intake decision.

On July 4, 2016, Harris signed and dated a Regular Grievance about the use of force by Jackson and Lowe on June 5, 2016. Walls Aff. ¶ 13 and Enclosure C, ECF No. 33-1. Harris stated, "I will name you in my § 1983 and for what reason if

---

§ 1983 Complaint in an earlier action, Case No. 7:16CV00460, V.S. 5, ECF No. 2. I will consider this document to be incorporated by reference into the current lawsuit.

you won't file my grievance so don't claim this is more than one issue." *Id.* at Enclosure C. He also mentioned having filed a prior Informal Complaint form, wanting to bring an assault charge, and wanting video reviewed. K. Sheets rejected this Regular Grievance for insufficient information because no Informal Complaint Form was attached. Harris did not appeal this intake decision.

After his July 4, 2016, Regular Grievance was rejected, Harris resubmitted it. *Id.* at ¶ 13 and Enclosure D, Ecf No. 33-1. The resubmitted Regular Grievance was rejected on July 12, 2016, for providing insufficient information, for failing to attach the Informal Complaint, and for being filed more than thirty days after the incident. Harris did not appeal this intake decision.

Given this evidence, I find it to be undisputed that Harris did not properly file a Regular Grievance within thirty days after the June 5, 2016, incidents that included an attached Informal Complaint form, in compliance with OP 866.1. Accordingly, I conclude that the defendants have established Harris's failure to exhaust administrative remedies as required under § 1997e(a).

However, an inmate may escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner,

through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Liberally construed, Harris's submissions state that he filed Informal Complaint forms and received no responses. If Harris could prove this allegation, he might also prove that he was prevented, through no fault of his own, from attaching a completed Informal Complaint form to the Regular Grievance he filed on June 4, 2016. That Regular Grievance was timely filed and was rejected because no Informal Complaint was attached. The defendants rely on their evidence that the Grievance Department had no record of receiving Informal Complaint forms from Harris about the June 5, 2016, incidents,[3] thus creating a material dispute as to the issue of availability of the grievance procedures. Accordingly, I will deny the defendants' motion for dismissal of Harris's excessive force claims under § 1997e(a) and refer the matter to the magistrate judge for further proceedings on exhaustion.[4] Specifically, I find the following material

---

[3] As stated, Harris received a disciplinary charge related to the threatening letter he addressed to Ms. Sheets and attached to his resubmitted Regular Grievance. During the disciplinary hearing on that charge, Harris claimed that he could not read or write, and that another inmate had filed the grievances on his behalf and had written the letter. The defendants contend that these statements preclude Harris from now claiming that he filed the Regular Grievances in the record. I cannot find that these statements alone resolve the exhaustion disputes for summary judgment purposes. Indeed, the disciplinary hearing officer found Harris guilty of making the threat. Moreover, Walls' affidavit states that Harris submitted the Regular Grievance documents in the record.

[4] As stated, the defendants bear the burden of proving the affirmative defense that the plaintiff inmate failed to exhaust available administrative remedies regarding his

disputes: (1) whether Harris filed one or more Informal Complaint forms about the June 5, 2016, incidents; (2) what recourse he had if he never received a response of any kind;[5] and (3) what information should have been omitted from his Regular Grievance forms to have them considered as addressing only one issue.

## C. The Retaliation Claim.

To state a cause of action under 42 U.S.C. §1983, the plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill

---

claims. *Jones*, 549 U.S. at 212. Once they have done so, the burden of proof shifts to the plaintiff to show by a preponderance of the evidence that the administrative remedies were unavailable to him through no fault of his own. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished) (citing *Moore*, 517 F.3d at 725). "The circuit courts of appeals have uniformly found that a judge can resolve factual disputes concerning exhaustion of administrative remedies under the PLRA." *Hill v. Haynes*, No. 3:06-CV-136, 2014 WL 4197588, at *3 (N.D.W. Va. Aug. 22, 2014), *aff'd,* 591 F. App'x 223 (4th Cir. 2015) (unpublished). Such questions of law arising in prisoner civil rights actions may be referred to a magistrate judge for factual development and preparation of a report making proposed findings of fact, conclusions of law, and recommended disposition of the issue. 28 U.S.C. § 636(b)(1)(B), (C).

[5] OP 866.1(V)(A)(3) states that if an inmate does not receive a timely response to an Informal Complaint form, he may, nevertheless, file a Regular Grievance and attach an Informal Complaint *receipt*, instead of the Informal Complaint form itself. The parties have provided no evidence that such receipts are issued at River North, when they are issued, or what an inmate could do if he did not receive a timely receipt after submitting an Informal Complaint form.

individuals' exercise of constitutional rights." *Am. Civil Liberties Union v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993). Specifically, prison officials may not retaliate against an inmate for exercising his constitutional right to access the court, *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978), nor may they take actions that violate his First Amendment "right to file a prison grievance free from retaliation." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

On the other hand, I must treat an inmate's claim of retaliation by prison inmates "with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

> [T]o state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.

*Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 738, (2018). "For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.*

Three times Harris filed a Regular Grievance form about the use of force incident on June 5, 2016. In the text on each of those forms, he stated his intention to file a lawsuit and include as defendants whoever refused to file his grievance form. These Regular Grievance forms were rejected as improperly filed — either for covering more than one issue, for failing to attach an Informal Complaint form, and/or for being untimely. Harris alleged in the Amended Complaint that Sheets brought a disciplinary charge against him because of these statements about his intended lawsuit. The uncontroverted evidence now in the record, however, cannot support this claim.

When Harris resubmitted his second Regular Grievance form, attached to it was a separate letter addressed to "Ms. Sheets." Walls Aff. ¶ 13 and Enclosure D, ECF No. 33-1. Both documents were stamped as received on July 12, 2016. The letter stated, in part, verbatim:

> Yes I am requesting my grievance receipt of this grievance being file[d], and will be in my grievance file. I <u>am</u> faile [sic] a § 1983 civil action against these officers in this matter . . . if you are not trying to be name with these defendants in my § 1983 claim for refus[]ing to file my grievance. I ask that you file my grievances.

*Id*. The letter closed with "A. Harris" and listed his inmate number and housing assignment. *Id.* The Regular Grievance was returned to Harris as improperly filed because July 12 was more than thirty days after the incident about which it complained and no Informal Complaint was attached.

On July 12, 2016, Harris was served with a Disciplinary Offense Report ("DOR") under OP 861.1 that charged him with committing an offense code 112 — demanding or receiving anything of value under threat of any kind, including by extortion or blackmail. On the DOR was this statement:

> On 07-12-2016 . . . I, K. Sheets, received an envelope addressed to my attention. Upon opening the envelope, inside was a demanding and threating [sic] letter and grievance form from [Harris] insisting that I violate VADOC procedure, 866.1, by processing his grievance that does not meet intake specifications or he would file a civil claim against me. Due to the threating [sic] nature of the letter this charge was written.

V.S. 9, ECF No. 5. Defendant Blevins signed the DOR as the Officer-In-Charge, and defendant MacVean conducted the disciplinary hearing. He found Harris guilty of committing an offense code 112 and imposed penalties of fifteen days in disciplinary segregation and "loss of ALL SGT – All." *Id.* at 10. This referred to statutory good time that Harris had already earned toward reducing his term of confinement. Mem. Supp. Mot. Summ. J. Ex. 2, MacVean Aff. ¶ 15, ECF No. 33-2. Defendant Dowell, a Unit Manager, approved the disciplinary findings, as did defendants Walrath, the River North Warden, and Elam, the Regional Administrator.

I conclude from the evidence that Harris has established two of the elements of his retaliation claim. Harris's filing of grievances was an exercise of his First Amendment rights. *Martin*, 858 F.3d at 249. Moreover, the disciplinary charge

and subsequent penalties imposed on Harris were contemporaneous actions likely to "deter a person of ordinary firmness" from further exercising his First Amendment rights. *Id.*

I find no material fact in dispute, however, on which Harris could prove a causal connection between his filing of grievances and the disciplinary charge, as the required third element in the retaliation analysis. On the contrary, the disciplinary charge was expressly based on Harris's threatening letter directed to Sheets and not on the grievance that accompanied the letter. Sheets also states in her affidavit that she brought the charge because of the threatening letter. Offense Code 112 prohibits inmates from using a threat of any kind to demand something of value. In the letter, Harris used the threat of a lawsuit as an attempt to obtain a thing of value to him — to have Sheets file his resubmitted Regular Grievance, even though she had already found that it did not comport with OP 866.1. Although Harris made lawsuit-related comments in the Regular Grievances filed on June 30 and July 4, 2016, undirected at any individual, those undirected threats did not generate a disciplinary charge. Those grievances, as well as the Regular Grievance resubmitted with the letter on July 12, 2016, were processed under the OP 866.1 procedures and rejected for noncompliance with those procedures. On these facts, Harris could not persuade a jury of a causal connection between his

filing grievances and his disciplinary charge. Accordingly, I will grant the defendants' Motion for Summary Judgment as to Harris's retaliation claims.

### D. The Due Process Claim.

"[A] state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily demonstrate the invalidity of [that prisoner's] confinement or its duration," unless the prisoner proves that the challenged criminal or disciplinary conviction has been terminated in his favor. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (interpreting *Heck v. Humphrey*, 512 U.S. 477 (1994)); *see also Edwards v. Balisok*, 520 U.S. 641, 647-48 (1997) (applying *Heck* to § 1983 claim seeking restoration of good conduct time forfeited as penalty for prison disciplinary conviction). Thus, when an inmate's § 1983 claim about a disciplinary conviction, if successful, could shorten his term of imprisonment through the restoration of forfeited good conduct time, the claim is barred under *Heck*, unless he first proves that the conviction has been terminated in his favor, through habeas proceedings or otherwise. If the plaintiff does not establish this favorable termination element, his § 1983 claim for damages is premature, and must be dismissed.

The record now establishes that because of the offense code 112 infraction, Harris forfeited all his earned good conduct time. If he prevailed in claims that the disciplinary proceedings violated due process, that result would imply that his term

of confinement as currently calculated because of the forfeited good conduct time is invalid. Harris offers no evidence that the disciplinary conviction has been vacated in any administrative or habeas corpus proceeding. Accordingly, he is barred from proceeding with any § 1983 claim that challenges the validity of that conviction and the resulting penalties. Therefore, I will grant the defendants' Motion for Summary Judgment as to Harris's due process claims.[6]

### III. CONCLUSION

For reasons stated, it is hereby **ORDERED** as follows:

1. The defendants' Motion for Summary Judgment, ECF No. 32, is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to Claims (2) and (3), alleging due process and retaliation claims against defendants Sheets, Blevins, MacVean, Dowell, Walrath, and Elam, and the clerk SHALL terminate these persons as parties. (Defendants Ponton, McBride, and Kanode have previously been terminated as parties by Order of March 21, 2018, ECF No. 29.) The motion is DENIED at this time as to Claim (1), alleging excessive force and bystander liability;

---

[6] Harris mentioned due process in connection with the disciplinary proceedings only in his initial Complaint, and not in the Amended Complaint. Because the so-called Amended Complaint is more akin to a supplement to the initial Complaint, however, I have elected to construe his submissions, as a whole, as raising a due process challenge.

2. The case is hereby REFERRED to the Honorable Pamela Meade Sargent, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for conduct of further proceedings, including an evidentiary hearing and preparation of a Report and Recommendation, in order to resolve the dispute regarding whether or not the established grievance procedures were available to Harris.

ENTER: February 19, 2019

/s/ *James P. Jones*
United States District Judge