# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ALEXANDER HARRIS,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:17cv00147 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **MARCUS ELAM, et al.,** | ) | |
| Defendants. | ) | |

The pro se plaintiff, Alexander Harris, a Virginia Department of Corrections, ("VDOC"), inmate, sues various VDOC employees in this civil rights action pursuant to 42 U.S.C. § 1983. The court entered an Opinion and Order in this matter on February 19, 2019, dismissing all of Harris's claims except for claims for excessive force and failure to intervene against Defendants Jackson, Meadows, Lowe, Williams and Morgan.[1] (Docket Item No. 46). United States District Judge James P. Jones found that Harris failed to exhaust his administrative remedies related to these claims. However, the matter was referred to the undersigned for an evidentiary hearing to determine whether the prison grievance procedures were, in fact, unavailable to Harris, thereby excusing his failure to exhaust. The matter is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

This evidentiary hearing was held on April 25, 2019. Based on the arguments and representations of counsel and Harris, as well as the evidence

---

[1] The matter was before the court on the defendants' Motion For Summary Judgment, ("Motion") (Docket Item No. 32), and Harris's response. (Docket Item No. 41).

presented at this hearing, I find that the prison grievance procedures were available to Harris, and I recommend that the court grant summary judgment in favor of the remaining defendants on Harris's remaining claims for failing to exhaust his administrative remedies.

A brief summary of the underlying facts in this case was set out in Judge Jones's February 19, 2019, Opinion and Order and will be repeated here. Harris claims that on June 5, 2016, while incarcerated at River North Correctional Center, ("River North"),[2] an officer confronted him about threatening to harm prison dogs if they bit him. Subsequently, Harris states that he was thrown to the ground, a canine was ordered to attack and bite him, and he was kicked in the face and head, despite posing no threat. He claims he was, thereafter, dragged to another area of the facility, where he was thrown to the ground, punched and kicked. According to Harris, he attempted to exhaust his administrative remedies related to these assaults. Harris warned officials in his grievance documents that if his grievances were not filed, he would name grievance officials as defendants in a lawsuit. Due to this warning, he was found guilty of the institutional offense of threatening K. Sheets, a former defendant in this case, and he was penalized with 15 days of disciplinary segregation and loss of all statutory good time credit. Other former defendants upheld these findings during Harris's disciplinary appeals. Harris then filed this § 1983 action.

In the February 19, 2019, Opinion and Order, Judge Jones found that the defendants established that Harris failed to exhaust his administrative remedies, as required under the Prison Litigation Reform Act, but he found that there was a material dispute as to the issue of availability of the grievance procedures to

_____

[2] Harris was transferred to Sussex I State Prison, ("Sussex I"), on August 10, 2016.

Harris. Thus, he referred the following specific issues to the undersigned for further consideration: (1) whether Harris filed one or more Informal Complaint forms about the June 5, 2016, incidents; (2) what recourse Harris had if he never received a response of any kind; and (3) what information should have been omitted from Harris's Regular Grievance forms to have them considered as addressing only issue.

## I. Facts

At the April 25 evidentiary hearing, Harris testified that, prior to his transfer to Sussex I on August 10, 2016, he was housed at River North. He testified that he also had been housed at Sussex II State Prison, ("Sussex II"), and Mecklenburg Receiving. At the time of the hearing, Harris was being held at Wallens Ridge State Prison, ("Wallens Ridge"), only for the purpose of attending the hearing and was to be returned to Sussex I at its conclusion. On June 5, 2016, the date of the incidents that are the basis of Harris's § 1983 action, Harris testified that he was housed in Cell A-115, a general population cell, at River North. Following the incident, he was moved to Cell A-201, a single occupancy segregation cell. He testified that this cell also was classified as a "strip cell," where he had no property available to him. Harris testified that he remained in A-201 for approximately 15 days before being moved to Cell A-219, another single occupancy segregation cell, but not a strip cell. He testified that he remained in A-219 for 30 days before being moved to Cell C-135, a general population cell.

Harris testified, at one point, that he completed an Informal Complaint form on June 6, 2016, the day following the alleged excessive force incidents. (Docket Item No. 53-1, Plaintiff's Exhibit No. 1). However, he stated that he dated this

Informal Complaint June 5, 2016, because this was the date the incidents actually occurred. Harris also later testified that he did not complete or submit any Informal Complaint form until he was housed in Cell A-219 because he did not have access to a pen or any other property while housed in Cell A-209, the strip cell, for 15 days. Harris testified that he gave this Informal Complaint to Counselor Thompson to make a copy and that the Warden came by Cell A-219 and spoke with him regarding the incident outlined in the Informal Complaint. Harris further testified that he sent a copy of this Informal Complaint to Institutional Investigator Horton, who came to see him approximately three weeks later. According to Harris, Horton stated he would get back to him, but Harris was transferred to Sussex I before he ever spoke with Horton again. Harris stated that he never received a response to this Informal Complaint. There is no tracking number indicated on this Informal Complaint, there is no date received by the Grievance Department noted, and there is no response contained on the form. The word "copy" is handwritten on the top left corner of the form.

In this Informal Complaint, Harris stated he wanted to take charges of unlawful excessive force against Sergeant Jackson and Officer Lowe for the incident that occurred in front of the A Building on June 5, 2016. He alleged they used excessive force against him for no reason and "put the K-9 attack dog on me for no reason." Harris stated that the dog bit his arm. Harris requested that the Informal Complaint be filed. He noted that Counselor Thompson had made a copy of it before he sent it to the Grievance Department. Harris testified that he had a copy of this Informal Complaint in his cell when he filed all three Regular Grievances that are relevant to his current § 1983 action.

Harris also testified that he submitted a Regular Grievance, dated July 4, 2016, while he was housed in Cell A-219. (Docket Item No. 53-5, Plaintiff's Exhibit No. 5). This Regular Grievance is stamped as received by the Grievance Department on July 6, 2016. In this Regular Grievance, Harris stated he had filed an Informal Complaint requesting to take charges for unlawful excessive force against Sergeant Jackson and Officer Lowe based on their June 5, 2016, actions. He again noted that the dog was made to attack him for no reason. Harris requested that this Regular Grievance be filed and that he be sent a grievance receipt. He further advised that he would "name you in my § 1983 … if you don't file my grievance so don't claim this is more than one issue." He specified this Regular Grievance was dealing with the excessive force issue as to Jackson and Lowe. Harris also requested the video footage of Jackson and Lowe using excessive force on him. He stated he wanted to file excessive force charges against them, as well as assault charges, for grabbing him around the neck and throwing him to the ground and making the dog bite his arm, all for no reason.

This Regular Grievance was rejected at intake by K. Sheets[3] on July 6, 2016, for insufficient information. Specifically, Sheets noted "no informal complaint attached." The form advised Harris to submit the Informal Complaint within five days so the grievance could be processed. Harris testified that this intake rejection was sent to him by mail after he left River North and was housed at Sussex I. This form instructed that if the inmate disagreed with the intake decision, he had five calendar days from the date of receipt to submit to the Regional Ombudsman for a review of the intake decision and that the Regional Ombudsman's decision was final. This Regular Grievance does not indicate that Harris appealed this intake

---

[3] Brian Walls, the Grievance Coordinator at River North, testified that K. Sheets was the Operations Secretary there.

decision to the Regional Ombudsman. Furthermore, Harris testified that he did not appeal this intake rejection because he was transferred to Sussex I. Harris also testified that he did not attach a copy of the Informal Complaint to the Regular Grievance, although he did not know why he failed to do so. He testified that he took no other steps to exhaust his administrative remedies before filing suit with regard to this particular Informal Complaint and Regular Grievance.

Harris testified he submitted another Informal Complaint, dated June 8, 2016, while housed in Cell A-219. (Docket Item No. 53-3, Plaintiff's Exhibit No. 3). He stated he gave this Informal Complaint to Lieutenant Hayes and asked him to give it to Investigator Horton. Harris did not testify that he asked anyone to forward this Informal Complaint to the Grievance Department. There is no Grievance Department receipt date indicated on this Informal Complaint, there is no tracking number, and no response is contained on this form. In this Informal Complaint, Harris stated he wished to file assault charges against Sergeant Jackson and Officer Lowe for unlawful excessive force, and he wanted the video to be viewed from in front of A Building and in the A-2 Pod. He included various allegations against Jackson, Lowe and Meadows, including the previous allegations, and, additionally, for being jerked out of a shower while handcuffed and being thrown face first to the floor. Harris testified he never received any response to this Informal Complaint, but he stated that Investigator Horton came and spoke with him regarding the allegations contained in it. Harris testified that he also kept a copy of this Informal Complaint in his cell.

Harris submitted another Regular Grievance, dated June 30, 2016, while housed in Cell A-219. (Docket Item No. 53-4, Plaintiff's Exhibit No. 4). This Regular Grievance is stamped as received by the Grievance Department on July 1,

2016. In it, Harris stated that this was his second Regular Grievance about this matter and that "you"[4] are preventing me from utilizing the prison grievance system and denying my due process rights. He stated that if "you" refuse to file my grievance, I have no choice but to file a § 1983 action naming "you" as a defendant. Harris further stated that he filed an Informal Complaint wanting to take charges of unlawful excessive force against Jackson and Lowe for their actions outside of A Building. He stated that Counselor Thompson was making him a copy of this Regular Grievance to use as part of his exhibits to the court. He asked that this be filed and that he be sent a grievance receipt. Harris requested to take assault charges out on Jackson and Lowe for unlawful excessive force outside of A Building and with the canine for no reason. He further stated that he requested the video footage to be reviewed to show that he was not doing anything wrong when Jackson and Lowe "jump[ed] on me."

This Regular Grievance was rejected at intake by D. Halsey on July 1, 2016, for "more than one issue – resubmit with only one issue." The Regular Grievance form itself instructs inmates how to appeal intake decisions. This form does not indicate that Harris appealed the intake decision. Furthermore, Harris testified that he never appealed this intake decision to the Regional Ombudsman because he felt he was "getting the runaround." Although Harris stated that he could not even get copies made, when questioned whether he had asked for any copies to be made for him while housed in segregation, he admitted he had not. Harris also testified that he had access to the institutional mail system while housed in segregation, but stated inmates were lucky if their mail went out.

---

[4] The Regular Grievance does not name a particular individual that will be sued.

Brian Walls, the Grievance Coordinator at River North, testified that D. Halsey had informed him that she rejected this Regular Grievance for containing more than one issue because Harris was complaining about (1) how the grievance process was working, and (2) he was complaining about his particular issue.

Harris resubmitted the July 4, 2016, Regular Grievance, which was stamped as received by the Grievance Department on July 12, 2016. (Docket Item No. 53-2, Plaintiff's Exhibit No. 2). It was again rejected at intake because Harris had failed to use the informal process to resolve his complaint. More specifically, it was noted that no Informal Complaint with a response was attached. It also noted that it appeared the Regular Grievance was filed outside of the 30-day time period for filing. Again, the form does not indicate that this intake decision was appealed to the Regional Ombudsman. The defendants submitted a letter that Harris attached to this resubmitted Regular Grievance. (Docket Item No. 53-6, Defense Exhibit No. 1). This letter is dated July 8, 2016, and is directed to K. Sheets. In this letter, Harris requested a grievance receipt for the resubmitted Regular Grievance. He also stated he was filing a § 1983 action against the officers in this matter, and if she did not want to be named in the suit, she needed to file the Regular Grievance. Harris stated at the bottom of this letter that he had Counselor Thompson make a copy of this Regular Grievance and Informal Complaint. This letter was stamped as received on July 12, 2016.

At the evidentiary hearing, Harris admitted that he did not attempt to appeal any of the intake decisions. He also agreed that he did not send a copy of the Informal Complaint with the Regular Grievance dated July 4, 2016. (Plaintiff's Exhibit No. 2). However, he stated he did not know why he did not attach a copy of the Informal Complaint. Harris testified that he completed all of the forms he

submitted while he was housed in Cell A-219. He stated that he did not submit anything while housed in Cell A-209 because he did not have access to any property, including a pen, as it was a strip cell. Thus, he completed the forms once he was moved to Cell A-219. Harris testified that every form he completed, he gave to either a Lieutenant or a Counselor to turn in for him.

On cross-examination, Harris admitted that, during the same time period, he filed multiple other Informal Complaints and Regular Grievances. For instance, he submitted three Informal Complaints, dated March 30, July 17 and July 31, 2016, all unrelated to the issues that form the basis of his current § 1983 action. (Docket Item Nos. 7, 8, 9; Defense Exhibit Nos. 2, 3, 4). Harris was housed in Cell A-115 when he filed the March 30 Informal Complaint, in Cell C-135 when he filed the July 17 Informal Complaint and in Cell A-205, a segregation cell, when he filed the July 31 Informal Complaint. He admitted that he received grievance receipts and responses to all of these Informal Complaints. Harris also filed a Regular Grievance, dated July 12, 2016, while housed in Cell C-135. (Docket Item No. 53-10, Defense Exhibit No. 5). This Regular Grievance was rejected at intake as a "non-grievable issue" because it dealt with the institutional disciplinary procedure and because "no other documents attached." In response to this intake rejection, Harris resubmitted the Regular Grievance and included the missing documents. Upon resubmission, the Regular Grievance was accepted and processed, and Harris received a response. (Docket Item No. 53-11, Defense Exhibit No. 6).

Lieutenant M. Hash, the Building Sergeant for the A2 Pod at River North during the relevant time, testified on behalf of the defendants. He stated that his duties included the day-to-day operations of the Special Housing Unit, ("SHU"). Hash testified that inmates housed in the SHU are unfit for general population. He

stated that the purpose of segregation is to maintain the orderly operation of the institution and that inmates in the SHU are confined to their single occupancy cells, with the exception of showers and outside recreation. These inmates do not have interaction with other inmates. While inmates housed in general population may retrieve Informal Complaints, Regular Grievances and similar paperwork themselves, inmates housed in the SHU must request such paperwork, which is located at the officers' station, from any staff member. Once the paperwork is completed, the inmate may return it to the staff member to be placed in the institutional mailbox. Hash testified that the mail is collected and taken to the mailroom daily. Likewise, responses are returned to the inmates through the institutional mail, which is delivered Monday through Friday by the night shift officers. Hash testified that each pod has a designated mail bag, and mail is distributed to each individual cell by an officer through the tray slot. He testified that if an inmate is waiting on a particular piece of mail, he may inquire about it by submitting a Request For Services form, which can be requested from any staff member, or he may verbally ask a staff member to check on it for him.

As stated previously, Brian Walls, the Grievance Coordinator at River North, also testified on behalf of the defendants. He stated that, under VDOC Operating Procedure, ("OP"), 866.1, Offender Grievance Procedure, which was in effect at all times relevant to Harris's § 1983 action, the first step in the grievance procedure is the informal process. At River North, Walls testified, this step is satisfied by filing an Informal Complaint. If an inmate is in general population, he places it in the institutional mail. If an inmate is in the SHU, he must request it from staff, and he must request that staff place it in the institutional mail. Walls testified that it is the inmate's responsibility to ensure that the Informal Complaint is turned in to the appropriate staff in the SHU. The Informal Complaint is then

taken to the mailroom, where it is sorted out and sent to the Grievance Department. Once at the Grievance Department, the Informal Complaint will be assigned to the correct department. It will be entered manually into CORIS, the VDOC computerized offender management system, where it will be assigned a log number. The computer system automatically will generate a receipt with a log number on it, which will be sent to the inmate through the institutional mail. Walls testified that the Informal Complaint submitted by an inmate then will go to the appropriate department for a response. He stated that the secretarial staff of each department comes to pick these up from the Grievance Department, and they must be signed for. Once the appropriate department makes a response, it is returned to the Grievance Department. The response is then manually typed into CORIS, it is saved, and a copy is placed in the inmate's physical grievance file. The original form is returned to the inmate through the institutional mail.

Walls testified that if an inmate does not receive a response to an Informal Complaint after 15 days, he must file the Informal Complaint receipt with the Regular Grievance. Filing a copy of an unprocessed Informal Complaint would not be sufficient because it would not constitute proof that the inmate attempted to submit it. If a Regular Grievance were submitted with such an unprocessed copy of an Informal Complaint, it would be rejected, and the inmate could then appeal the rejection to the Regional Ombudsman.

Walls testified that inmates are educated on the Offender Grievance Procedure, contained in OP 866.1, when they arrive at a facility, and it is included in the Offender Handbook.

Walls testified that when Harris's June 30, 2016, Regular Grievance was rejected at intake for containing more than one issue, he was advised to resubmit the Regular Grievance with only one issue. Walls testified that Harris could have appealed the intake decision to the Regional Ombudsman, but he did not. Walls testified that the Grievance Department never received an Informal Complaint from Harris regarding the June 5, 2016, incidents. Walls testified that he based this testimony on his review of the CORIS reports, which showed that no Informal Complaints were filed by Harris between March 31 and July 15, 2016. If any Informal Complaints had been received between these two dates, he stated, they would be included in a screen shot that was taken from CORIS, which showed part of Harris's grievance history. (Docket Item No. 53-14, Defense Exhibit No. 9). Walls testified that if an inmate wanted to check on the status of an Informal Complaint he had mailed to the Grievance Department, he could either file another Informal Complaint dealing with the same subject, or he could submit a Request For Services form to the Grievance Department asking about the status. Walls testified that he did not remember receiving any such request form from Harris and, if he had, it would be in Harris's file. There is no such request form contained in Harris's file.

Walls testified that the Informal Complaint dated June 5, 2016, (Plaintiff's Exhibit No. 1), was never processed through the Grievance Department because it was not date stamped, it had no tracking number, and it was not assigned to any specific department. He testified that the Informal Complaint would not have just been given to the Institutional Investigator, as Harris testified. With regard to the Informal Complaint dated June 8, 2016, Walls testified it, also, was not processed by the Grievance Department. It was not date stamped, it had no tracking number, and it was not assigned to any individual. Additionally, Walls noted that this form

listed "KMCC" on it, which indicates it was a form from Keen Mountain. However, Harris testified he had never been incarcerated at Keen Mountain.

Walls testified that receipts are generated by the prison computer system for the purpose of showing that the Informal Complaint has been processed. If an inmate does not receive a receipt, he should send the Grievance Department a request form asking if the Informal Complaint had been received and/or processed. Harris testified that he did not receive any receipts for his Informal Complaints. However, he did not send any requests to the Grievance Department asking about the status of his Informal Complaints. Walls testified that he never refused to process any of Harris's Informal Complaints. He further testified that if Harris had properly filed an Informal Complaint, it would have been processed and responded to.

The court notes that Walls also provided a sworn Affidavit in connection with the defendants' Motion. (Docket Item No. 33-1, ("Walls Affidavit")). A copy of OP 866.1 was attached to Walls's Affidavit, and it also was offered at the evidentiary hearing. (Walls Affidavit at 7-20; Docket Item No. 53-13, Defense Exhibit No. 8.) Under OP 866.1, all issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, state and federal court decisions, laws and regulations and other matters beyond the control of the VDOC. (Walls Affidavit at 1; OP 866.1 at 5.)

According to Walls, grievances which do not meet the filing requirements of OP 866.1 are returned to the offender within two working days from the date of receipt, noting the reason for return on the intake section of the grievance form. (Walls Affidavit at 1-2.) The offender is instructed how to remedy any problems

with the grievance when feasible. (Walls Affidavit at 2.) If an offender wishes review of the intake decision on any grievance, he may send the grievance to the applicable Regional Ombudsman within five calendar days of receipt for a determination. (Walls Affidavit at 2.) There is no further review of the intake decision. (Walls Affidavit at 2.)

A review of OP 866.1 shows that it requires complete exhaustion. OP 866.1 states:

> An offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue.
> … If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue.

(OP 866.1 at 6.)

Prior to submitting a Regular Grievance, the offender must demonstrate that he has made a good faith effort to informally resolve his complaint, which may be accomplished by submitting an Informal Complaint to the Grievance Department at the appropriate institution. (Walls Affidavit at 2.) The Informal Complaint will then be forwarded to the appropriate department head. (Walls Affidavit at 2.) Prison staff should respond to an Informal Complaint within 15 calendar days to ensure that informal responses are provided prior to the expiration of the 30-day time period in which an offender may file his Regular Grievance. (Walls Affidavit at 2.) Regular Grievances are to be submitted within 30 days from the date of the occurrence/incident. (Walls Affidavit at 2.) Only one issue may be addressed per

grievance. (Walls Affidavit at 2.) The Regular Grievance must accompany all records necessary to investigate and address the Informal Complaint. (Walls Affidavit at 2.) Regular Grievances are considered received when they are dated/date stamped on the working day received. (Walls Affidavit at 2.)

There are three possible levels of review available for Regular Grievances that are accepted at intake. (Walls Affidavit at 2.) Level I reviews are conducted by the Facility Unit Head of the facility where the offender is located. (Walls Affidavit at 2.) If the offender is dissatisfied with the Level I determination, he may appeal to Level II. (Walls Affidavit at 3.) Level II reviews are conducted by the Regional Administrator, Health Services Director or Chief of Operations for Classification and Records. (Walls Affidavit at 3.) For most issues, Level II is the final level of review. (Walls Affidavit at 3.) For those issues appealable to Level III, the Deputy Director or the Director of the VDOC conducts a review of the Regular Grievance. (Walls Affidavit at 3.) The time limit for issuing a Level I response is 30 days, 20 days for a Level II response and 20 days for a Level III response. (Walls Affidavit at 3.) Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the Regular Grievance for appeal to the next level of review. (Walls Affidavit at 3.)

According to Walls, grievance records reflect that Harris did not submit any Informal Complaints concerning the allegations that are the subject of his § 1983 action, and he has not exhausted his administrative remedies concerning such allegations. (Walls Affidavit at 3.) Furthermore, Walls testified that, as of the time he signed his Affidavit on July 26, 2017, Harris continued to utilize the VDOC grievance process. (Walls Affidavit at 6.) Specifically, since June 5, 2016, Harris

had filed nine Informal Complaints and one Regular Grievance on matters unrelated to the lawsuit currently before the court. (Walls Affidavit at 6.)

K. Sheets also provided a sworn Affidavit in connection with the defendants' Motion. (Docket Item No. 33-3, ("Sheets Affidavit")). Sheets testified that, on July 12, 2016, she received an envelope addressed to her attention from Harris, which contained a threatening letter from him, insisting that she violate OP 866.1 by processing his Regular Grievance, even though it did not meet intake specifications. (Sheets Affidavit at 1.) Due to the threatening nature of the letter, Sheets charged Harris with Disciplinary Offense Code 112 – Demanding or Receiving Anything of Value Under Threat. (Sheets Affidavit at 1.) Sheets testified that there were no records to suggest that Harris, prior to submitting his letter to her, ever submitted an Informal Complaint concerning being assaulted by Sergeant Jackson and Officer Lowe or being bit by a canine, as he alleges in this lawsuit. (Sheets Affidavit at 2.)

In response to the Motion, Harris submitted to the court his own sworn Affidavit, dated May 22, 2018. (Docket Item No. 41-1, ("Harris Affidavit")). In this Affidavit, Harris stated that he submitted numerous Informal Complaints regarding "the officer who assaulted him," all of which went unanswered. (Harris Affidavit at 4.) Harris further stated he filed a Regular Grievance on July 4, 2016, stating his intention to file excessive force charges against Jackson and Lowe for the June 5, 2016, assault. (Harris Affidavit at 4.) Harris also stated that he diligently attempted to exhaust his administrative through the process made available to him, but was consistently blocked by prison administrators who refused to process his Informal Complaints and returned them to him. (Harris Affidavit at 6.) He stated that, prior to submitting his Informal Complaints, he

made copies of them, which he sent to this court. (Harris Affidavit at 6.) Harris stated that his attempt to appeal the intake decisions regarding his Regular Grievances was "block[ed]" by B. Walls's failure to respond. (Harris Affidavit at 6.) He stated that the Informal Complaints concerning the assault by Jackson and Lowe, as well as being bit by a canine, were submitted, but never answered or processed. (Harris Affidavit at 6.)

## II. Analysis

The standard for review on a motion for summary judgment is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may

not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the

grievance through all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90.

Thus, before Harris may proceed with his claims in this court, he must first have exhausted the administrative remedies available to him through the VDOC's Grievance Procedure. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Harris argues that he has attempted to exhaust his administrative remedies, but his attempts have been ignored, and no one responded to them. In particular, Harris has provided evidence that he attempted to exhaust his administrative remedies as to his excessive force and failure to intervene claims by filing Informal Complaints dated June 5, 2016, and June 8, 2016. According to Harris, he submitted these forms, but never received a receipt or any response to them. He also claims that, during a 15-day period following the incidents, he was held under conditions of confinement that prevented him from pursuing any administrative remedies. Specifically, immediately following the June 5, 2016, incidents, Harris was placed in cell A-201, which is a strip cell, where he was prohibited from possessing any property, including pens.

Based on the evidence, I make the following findings regarding the questions set out in Judge Jones's February 19, 2019, Opinion and Order. As stated

above, Judge Jones directed the undersigned to receive further evidence regarding
the following specific issues:

(1) Whether Harris filed one or more Informal Complaints about the June 5,
2016, incidents;

(2) What recourse Harris had if he never received a response of any kind;
and

(3) What information should have been omitted from Regular Grievance
forms to have them considered as addressing only one issue.

I will address these issues in succession. First, I find that Harris did not file one or
more Informal Complaints regarding the June 5, 2016, incidents. After hearing the
testimony and reviewing the evidence submitted at the evidentiary hearing, as well
as that submitted both in support of and in opposition to the Motion, I find Harris's
testimony on this issue incredible. I first note the discrepancy in Harris's initial
testimony that he completed the first Informal Complaint, (Plaintiff's Exhibit No.
1), on June 6, 2016, the day after the incident, with his subsequent testimony that
he did not complete any Informal Complaints until after he was moved to Cell A-
219, which was approximately 15 days after the incident. Additionally, although
Harris testified he dated the first Informal Complaint June 5, 2016, because this
was the date of the incident which was the subject of the Informal Complaint,
Harris's other Informal Complaint was not dated June 5, 2016. Instead, Harris's
second Informal Complaint was dated June 8, 2016, even though he testified he
submitted it after being moved to Cell A-219. Harris did not provide any
explanation why he did not also date this Informal Complaint June 5, 2016, or why
he chose to date it June 8, 2016, which was nearly two weeks before he was placed
in Cell A-219. The court finds these discrepancies curious, at the very least.

Moreover, although Harris testified that he had the Informal Complaint forms he alleges he submitted, but which were never processed by the Grievance Department, in his cell at the time he filed his Regular Grievances, he did not attach them to the Regular Grievances, as required under OP 866.1. When questioned by the court as to why he failed to do this, he simply stated that he did not know. This was despite the fact that the July 4, 2016, Regular Grievance, which was rejected by K. Sheets for intake, specified that no Informal Complaint had been attached and that Harris could submit it within five days so the Regular Grievance could be processed. Nonetheless, Harris did not submit the Informal Complaint as instructed. Instead, he chose to resubmit the same Regular Grievance, but with a letter directed to K. Sheets, in which he requested a grievance receipt for this resubmitted Regular Grievance. Harris also stated in this letter that he was filing a § 1983 action against the officers in this matter, and she needed to file his Regular Grievance if she did not want to be named as a defendant in the suit, as well.

Harris also admitted that he did not file any request forms, inquiring into the status of his Informal Complaints when he did not receive responses to them, or inquiring as to why he did not receive receipts for them. He also did not file any Informal Complaints on this topic, nor did he ask a staff member to check on the status of the responses or the receipts to his Informal Complaints.

Furthermore, Harris testified that he gave the first Informal Complaint, dated June 5, 2016, to Counselor Thompson to make a copy and that he sent a copy to Institutional Investigator Horton. Upon later questioning, Harris testified he had not asked for anything to be copied while he was housed in the SHU. He testified that he gave the second Informal Complaint, dated June 8, 2016, to Lt. Hayes to

give to Investigator Horton. However, Walls testified as to the proper procedure for inmates housed in the SHU to file "paperwork." Essentially, Walls testified that such inmates must give the paperwork to any staff member to be placed in the institutional mail system. It is not to be given to an Investigator or any other staff member. Harris did not testify he gave the Informal Complaint form to anyone to be placed in the institutional mail. Thus, even if the court were to find that Harris attempted to submit these Informal Complaints, he did not do so properly pursuant to OP 866.1.

Moreover, defense counsel argued to the court that the Informal Complaint dated June 5, 2016, is not the same form as all the other Informal Complaints Harris submitted.[5] In particular, the June 5, 2016, Informal Complaint has the following information contained on the top right corner: "Informal Complaint 866_F3_4-16." However, all of the Informal Complaints submitted by Harris, which were unrelated to the subject matter of the instant action, and which were offered as exhibits by defense counsel, contain the following information in the top right corner:        "Effective Date: July 1, 2013

Operating Procedure 866.1 Attachment 2."

Additionally, the text of the "Instructions For Filing" section on the June 8, 2016, Informal Complaint, filed as Plaintiff's Exhibit No. 3, does not perfectly line up with the same section on the unrelated Informal Complaints offered by the defense and marked as Defense Exhibit Nos. 2, 3 and 4. Also, that Informal Complaint indicates that it was a form obtained at Keen Mountain, despite Harris's

---

[5] The court is not including the Informal Complaint dated June 8, 2016, in this comparison, as it already has been noted that it appears to have been a form from Keen Mountain.

testimony that he has never been housed there, and no one claims that Harris has ever been housed at Keen Mountain. Harris had earlier testified that he kept a stack of Informal Complaint forms in his cell that he had obtained at River North, and these were the Informal Complaints he had submitted regarding the June 5, 2016, incidents.

Lastly, the court notes that Harris testified that the June 5, 2016, Informal Complaint he submitted to the court was a copy of the one he had submitted for filing and to which he never received a response. However, it is clear to the court that it is a handwritten original, not a copy as Harris testified, because the impressions from the handwriting can be felt on the document itself.

Given all of these discrepancies in Harris's testimony, as well as his failure to undertake various actions, the court finds Harris's testimony incredible, generally, and, specifically, the veracity of his claim that he ever submitted these Informal Complaints for filing. Such a finding is bolstered by Walls's testimony that the Grievance Department never received an Informal Complaint from Harris regarding the June 5, 2016, incidents. Walls reviewed the CORIS reports for Harris, which showed that no Informal Complaints were filed between March 31 and July 15, 2016. Walls also testified that the two Informal Complaints Harris claims he submitted were never processed through the Grievance Department because they contained no date stamp, no tracking number, and neither was assigned to a specific department or individual for review. Walls testified that he never refused to process any of Harris's Informal Complaints or Regular Grievances.

Next, I find that Harris had multiple avenues of recourse if he had properly submitted one or more Informal Complaints regarding the June 5, 2016, incidents, but never received a response of any kind. First, OP 866.1 allows an inmate to appeal to the next appropriate level of review at the expiration of the time limit without the issuance of a response. (Walls Affidavit at 3; OP 866.1 at 11.) Harris attempted to do this by filing Regular Grievances. However, he did not attach proof that he attempted to resolve his issue first by way of the informal process. Because he alleges he received no responses to his Informal Complaints, he should have attached copies of the receipts for the filing of his Informal Complaints. However, he also alleges he did not receive such receipts. Walls testified that, once the information from an inmate's Informal Complaint is manually entered into CORIS, the computer automatically generates a receipt for the inmate, showing the Informal Complaint has been received by the Grievance Department. Harris admitted that he received such receipts when he awaited responses to the unrelated Informal Complaints filed as exhibits by defense counsel. Curiously, however, he claims he never received such receipts for the two Informal Complaints he alleges he submitted that are relevant to the instant action.

Additionally, testimony also was provided by both Lt. Hash and Walls that there were certain actions Harris could have undertaken if he wished to check on the status of the responses or the status of the receipts to his Informal Complaints. In particular, Lt. Hash testified that the inmate could inquire about these things by submitting a Request For Services form, which could be requested from any staff member, or he could verbally ask a staff member to check on these things for him. Likewise, Walls testified that, if an inmate mailed an Informal Complaint and wanted to check on its status, he could file another Informal Complaint dealing with the subject, or he could submit a Request For Services form to the Grievance

Department asking about its status. However, Walls testified that he did not remember receiving any such request form from Harris and, if he had, it would be in Harris's grievance file. Walls testified that Harris's grievance file contained no such request form.

All of this being the case, I find that, even if Harris properly filed one or more Informal Complaints regarding the June 5, 2016, incidents, but never received a response from the Grievance Department, there were at least three actions he could have taken. He could have filed another Informal Complaint; he could have filed a request form; or he could have verbally asked a staff member to check its status. Harris did none of these things. Thus, I find that Harris had other avenues he could have explored when he did not receive a response to or a receipt for his Informal Complaints, but he admits he undertook none of them.

The final question before the court for consideration is what information should have been omitted from Harris's Regular Grievance forms so they would have addressed only one issue. As stated herein, the Regular Grievance dated June 30, 2016, was rejected for intake by D. Halsey, as containing more than one issue, in violation of OP 866.1. Halsey advised Harris to resubmit the Regular Grievance with only one issue. A summary of the content of this Regular Grievance is as follows: Harris complained that the Grievance Department was preventing him from using the prison grievance system and denying him his due process rights. He also advised that if this Regular Grievance was not filed, he would file a §1983 action naming "you" as a defendant. Harris then proceeded to complain of the alleged incidents that occurred on June 5, 2016, and stated his desire to take out charges of unlawful excessive force against Jackson and Lowe, as well as assault charges. He stated that he had requested that the video footage be reviewed, which

would show he was doing nothing wrong when he was "jumped on" by Jackson and Lowe. At the hearing, Walls testified he had contacted Halsey, who stated her rejection was based on the finding that Harris was complaining (1) about how the grievance procedure was working; and (2) about this particular issue that forms the basis for his § 1983 action. That being said, if Harris had resubmitted the Regular Grievance without the allegations of being prevented from utilizing the grievance procedure and of being denied his due process rights, it would not have been rejected for containing more than one issue.

Aside from the questions posed by Judge Jones for the court's consideration, the undersigned would add that, even if the court were to find Harris's allegations credible, he admitted that he did not appeal any of the Regular Grievance intake decisions, rejecting them for Harris's failure to provide proof that he utilized the informal process before filing the Regular Grievance. In fact, Harris admitted that he did not appeal any of the Regular Grievance intake decisions, regardless of their basis for rejection. The instructions for appealing the intake decision are printed clearly on each form, and Walls testified that all inmates are educated on the prison grievance system at orientation, as well as in the Offender Handbook. Harris does not claim he was unaware that he could appeal such intake decisions. As stated herein, it is clear that an inmate must "properly exhaust" his administrative remedies under the PLRA. This means he must properly use all steps that the VDOC holds out, so that the VDOC may address the issues on the merits. *See Woodford*, 548 U.S. at 90. Thus, Harris had to file a grievance raising his claim and pursue it through all available levels of appeal before he could bring a § 1983 action in this court. *See Woodford*, 548 U.S. at 90. Therefore, Harris, by his own admission, did not meet the proper exhaustion requirements of the PLRA.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. There is no genuine dispute of material fact as to whether the VDOC grievance procedure was available to Harris;
2. There is no genuine dispute of material fact that Harris did not properly exhaust his administrative remedies before filing suit; and
3. The court should enter summary judgment in the defendants' favor on Harris's remaining claims.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court enter summary judgment in the defendants' favor on Harris's remaining claims.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.    § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: May 21, 2019.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE